UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS COMMERCIAL INSURANCE COMPANY; PROPERTY & CASUALTY INSURANCE COMPANY OF HARTFORD,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY UTILITIES (CALPECO ELECTRIC) LLC,<br><br>Defendant. | No. 2:21-cv-01485-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

On July 13, 2021, Plaintiffs Travelers Commercial Insurance Company ("Travelers") and Property & Casualty Insurance Company of Hartford ("Hartford" and collectively with Travelers, "Plaintiffs") filed a Complaint in the Superior Court of California, County of Mono, against Defendant Liberty Utilities (CalPeco Electric), LLC ("Defendant"), alleging causes of action for inverse condemnation and negligence. Compl., ECF No. 1-1 ("Compl."). Defendant subsequently removed the case to this Court pursuant to 28 U.S.C. § 1332. ECF No. 1 ¶ 5 ("Not. Removal"). Presently before the Court is Plaintiffs' Motion to Remand. ECF No. 4 ("Pls.' Mot."). This matter has been

///

///

1

fully briefed. ECF Nos. 6 ("Def.'s Opp'n"), 10 ("Pls.' Reply"). For the reasons set forth below, Plaintiffs' Motion is GRANTED.[1]

## BACKGROUND[2]

According to the Complaint, Defendant owns, installs, constructs, operates, and maintains overhead power lines, together with supporting towers and appurtenances throughout California for the purpose of transmitting and distributing electricity to the general public. On November 17, 2020, a fire ignited near the Mountain View Barbeque restaurant located in Coleville, California ("Mountain View Fire"), which burned in excess of 20,000 acres, destroyed 90 structures, and killed one person. The Mountain View Fire started when equipment owned, operated, and maintained by Defendant, including but not limited to, a high voltage distribution line, failed and ignited a vegetation fire. Several eyewitnesses observed the fire in its early stages and saw Defendant's distribution line on the ground in the area where the fire was first observed.

The Complaint further alleges that three hours before the Mountain View Fire, the California Highway Patrol issued a "High Wind Advisory from the Inyo/Mono County Line to the Nevada State Line." That same morning, an electrical event occurred on Defendant's Topaz circuit which provides electricity to the cities of Coleville and Walker, resulting in a loss of electricity hours before the fire. Shortly before the Mountain View Fire began, Defendant notified its customers, including Plaintiffs' insureds, that it had reenergized the circuit and power had been restored to "Coleville – Topaz." Approximately 16 minutes after Defendant reenergized its circuit during the high winds, the Mountain View Fire ignited.

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Local Rule 230(g).

[2] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Complaint.

Plaintiffs had issued insurance policies providing coverage against loss due to damage caused by fire, water, and other casualties to their insureds. In accordance with those policies, Plaintiffs have paid or will pay money to their respective insureds for damages caused by the Mountain View Fire. Through this action, Plaintiffs seek recovery of the amounts paid, and to be paid, to their insureds.

## STANDARD

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different States, [or] citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)–(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id. Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

1  If the district court determines that removal was improper, then the court may also
2  award the plaintiff costs and attorney fees accrued in response to the defendant's
3  removal. 28 U.S.C. § 1447(c). The court has broad discretion to award costs and fees
4  whenever it finds that removal was wrong as a matter of law. Balcorta v. Twentieth-
5  Century Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

## ANALYSIS[3]

Plaintiffs move to remand this case to state court on grounds that removal violates 28 U.S.C. § 1441(b)(2), also known as the "Forum Defendant Rule," which provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." In other words, removal is improper if Defendant is a resident of the forum state, i.e., California.[4]

For purposes of diversity jurisdiction, a corporation is a citizen of both the state where it was incorporated and the state where it has its primary place of business. See 28 U.S.C. § 1332(c). According to the Notice of Removal, Travelers was incorporated and has its principal place of business in Connecticut whereas Hartford was incorporated in Indiana and has its principal place of business in Connecticut. Not. Removal ¶¶ 9–10. On the other hand, a limited liability company "is a citizen of every state of which its owners/members are citizens." Johnson v. Columbia Props. Anchorage, LP, 437 F.3d

---

[3] In their Motion, Plaintiffs direct the Court to another Eastern District court case in which Defendant sought removal based on identical pleadings. Pls.' Mot. at 5–6; see Tackitt v. Liberty Utilities (CalPeco Electric) LLC, Case No. 2:21-cv-00179-JAM-DB. Along with its Opposition, Defendant has provided the transcript of proceedings on a motion to remand in that case dated June 22, 2021, in which the Court granted said motion and remanded the case back to state court. See Ex. 15, Mijanovic Decl., ECF No. 8-15. While neither party has moved for judicial notice of the transcript, it is nevertheless the proper subject of judicial notice. See Fed. R. Evid. 201(c) (providing the court "may take judicial notice on its own"); Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001) (stating a court may take judicial notice of matters of public record).

[4] There is no dispute as to whether the amount in controversy requirement is met.

4

1  894, 899 (9th Cir. 2006) (citations omitted).  Defendant claims that its sole member,
2  Liberty Utilities Co. ("LUCo"), was incorporated in Delaware and has its principal place of
3  business in Arizona.  Not. Removal ¶ 8.  Here, Plaintiffs dispute that LUCo's principal
4  place of business is in California, not Arizona, and thus "[a]s a California entity,
5  [Defendant] is categorically barred from seeking this notice of removal."  Pls.' Mot. at 3;
6  see Compl. ¶ 10 (stating that Defendant and LUCo both do business in California).
7         The Supreme Court has defined "principal place of business" as "the place where
8  a corporation's officers direct, control, and coordinate the corporation's activities."  Hertz
9  Corp. v. Friend, 559 U.S. 77, 92–93 (2010).  In other words, "it should normally be the
10  place where the corporation maintains its headquarters—provided that the headquarters
11  is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not
12  simply an office where the corporation holds its board meetings (for example, attended
13  by directors and officers who have traveled there for the occasion)."  Id. at 93.
14         First, Defendant argues that "a holding company such as LUCo is treated
15  differently when determining its citizenship."  Def.'s Opp'n at 9.  Defendant relies on the
16  Ninth Circuit's decision in 3123 SMB LLC v. Horn ("Horn"), which discussed the
17  applicability of Hertz's "nerve center" test to holding companies.  See 880 F.3d 461
18  (9th Cir. 2018).  Because a holding company's purpose is to "hold[] interest in other
19  companies" and thus "there is little to direct, control, or coordinate," the Ninth Circuit held
20  that "a recently-formed holding company's principal place of business is the place where
21  it has board meetings, regardless of whether such meetings have already occurred,
22  unless evidence shows that the corporation is directed from elsewhere."  Id. at 465, 468;
23  see Def.'s Opp'n at 10 ("In effect, the Ninth Circuit concluded that the location of the
24  holding company's board meetings controlled over the fact that the officer and directors
25  lived in California.").
26         However, the facts of Horn are distinguishable from the present case.
27  Significantly, the holding company in Horn was only 25 days old and "[i]n that brief time,
28  the only business that [said company] conducted was to incorporate."  Horn, 880 F.3d at

467. Given the difficulty in determining the holding company's nerve center, the court thus concluded that it could look to the location of its board meetings even if such meetings have not yet occurred. Id. at 468. Here, however, Defendant's evidence shows that LUCo was incorporated in 2010 under the laws of Delaware and thus, it is not a recently formed holding company. See Ex. 1, Mijanovic Decl., ECF No. 8-1; Ex. 15, Mijanovic Decl., ECF No. 8-15 (stating that "defendant has presumably engaged in a lot more corporate acts than the corporation in Horn which could shed light on where it is directed and controlled possibly making the location of the board meetings less determinative."). Indeed, Defendant has provided Annual Franchise Tax Reports and W-9 forms that were filed between 2014 and 2020. See Exs. 2–3, Mijanovic Decl., ECF Nos. 8-2, 8-3. Furthermore, the location of board meetings is proper "unless evidence shows that the corporation is directed from elsewhere." Horn, 880 F.3d at 468. Defendant states that "LUCo does not routinely conduct in-person board meetings," and thus it cannot be said that LUCo's activity is directed at such meetings. Ex. 12, Wiley Decl., ECF No. 8-12 ¶ 14; see also Horn, 880 F.3d at 471 ("Because 3123 SMB presented evidence that [the holding company's] <u>minimal activity was directed from board meetings</u> in Missouri, that state appears to be the corporation's principal place of business.") (emphasis added). Accordingly, the holding in Horn is inapplicable to the present case.[5]

Regardless, the evidence presented by both parties reveals inconsistencies as to LUCo's place of business. LUCo registered as a foreign corporation in California in 2014, Ex. 8, Mijanovic Decl., ECF No. 8-8, at 1, and in its Statements of Information filed in 2015 and 2016 with the California Secretary of State, LUCo lists an Avondale, Arizona, address for its principal executive office and Gregory Sorenson ("Sorenson"),

---

[5] Even if the Court were to consider the location of LUCo's board meetings, the last one occurred in 2017 in Missouri. See Ex. 6, Mijanovic Decl., ECF No. 8-6. There is no evidence that any board meeting occurred in Arizona and thus it is unclear how the holding in Horn helps Defendant's position that its principal place of business is in Arizona. Defendant's assertion that Arizona is one likely location for future board meetings is nowhere near sufficient to carry its burden. See Ex. 12, Wiley Decl., ECF No. 8-12 ¶ 14.

LUCo's chief executive officer.  Ex. 9, Mijanovic Decl., ECF No. 8-9, at 1–2.  However, in its Statements of Information filed each year between 2017 and 2020, LUCo lists a Tahoe Vista, California, address for its principal executive office.  Id. at 3–8.  In the Statements of Information for 2017, 2018, and 2019, the same California address was also listed for Sorenson.  Id. (listing the Avondale, Arizona, address for Sorenson in the 2020 Statement of Information).

   Defendant responds that the listings of the California address were clerical errors made by an employee in Canada.  See Ex. 12, Wiley Decl., ECF No. 8-12 ¶¶ 17–18.  In support, Defendant provides Annual Franchise Tax Reports filed with the State of Delaware between 2014 and 2019 which list the Avondale, Arizona, address as the principal place of business, as well as W-9 forms filed with the State of Delaware from 2017 to 2020 which list Avondale and Litchfield Park, Arizona, addresses.  Exs. 2–3, Mijanovic Decl., ECF Nos. 8-2, 8-3.  However, the Court remains skeptical especially since the California address was listed in four separate Statements of Information filed with the California Secretary of State between 2017 and 2020.  See Ex. 9, Mijanovic Decl., ECF No. 8-9, at 3–8 (marking "no change in any of the information contained in the last Statement of Information filed with the California Secretary of State" in the 2018 and 2019 Statements of Information).  Furthermore, in the Annual Franchise Tax Reports filed in 2017 and 2018, Sorenson is not only listed as "President" but is listed at a Downey, California, and the Tahoe Vista, California, addresses, respectively.  See Ex. 2, Mijanovic Decl., ECF No. 8-2, at 7, 9.  Such inconsistencies in the documentation provided by the parties raise a question as to whether LUCo's principal place of business is in California or Arizona.

   Defendant next presents a Certificate of Surrender filed on March 30, 2021, with the California Secretary of State in which LUCo "surrenders its rights and authority to transact intrastate business in the State of California" and provides a Litchfield Park, Arizona, mailing address.  Ex. 11, Mijanovic Decl., ECF No. 8-11.  However, such a filing does not effectively demonstrate that LUCo's principal executive office is in Arizona, and

1  it only lists an Arizona mailing address for copies of legal service.  See id.  Even after the
2  Certificate of Surrender was filed, a search of LUCo on the California Secretary of
3  State's website still lists the Tahoe Vista, California, address as LUCo's address.  Ex. J,
4  ECF No. 4-11 (search processed on April 27, 2021).

5  Lastly, Defendant provides a declaration by Todd C. Wiley ("Wiley"), Vice
6  President and Associate General Counsel for LUCo.  Ex. 12, Wiley Decl., ECF No. 8-12
7  ¶ 2.  Wiley represents that LUCo has never operated out of nor maintained an office in
8  California but instead, its chief corporate office has been in Arizona since 2014 where he
9  has worked.  Id. ¶¶ 8, 11 ("LUCo has never registered as a foreign corporation with the
10 State of Arizona.").  While acknowledging that LUCo does not have any employees (only
11 officers), Wiley states the Arizona office "is a full corporate office" and that he performs
12 legal work, reviews corporate records, and "help[s] prepare certain LUCo corporate
13 resolutions, debt issuances, contracts and other matters" in that office.  Id. ¶¶ 12–13.
14 Finally, Wiley states that he "receive[s] and review[s] LUCo's mail at the Arizona office
15 and assign[s] matters as appropriate for resolution, including legal notices, bankruptcy
16 filings, letters from agencies and other similar matters."  Id. ¶ 13.  However, none of
17 these conclusory allegations demonstrate that the Arizona office is "where a
18 corporation's officers direct, control, and coordinate the corporation's activities."  Hertz,
19 559 U.S. at 93.

20 Ultimately, Defendant bears the burden of establishing federal jurisdiction and the
21 pending Motion must be granted if there is any doubt as to the right to removal.  See
22 Ethridge, 861 F.2d at 1393; Gaus, 980 F.2d at 566.  Defendant has failed to establish
23 with sufficient evidence that LUCo's principal place of business is in Arizona, not
24 California, and therefore, Plaintiffs' Motion to Remand must be GRANTED.
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Remand, ECF No. 4, is GRANTED.  Accordingly, the Court REMANDS this case back to the originating state court, the Superior Court of California, County of Mono, for final adjudication.  Pursuant to 28 U.S.C. § 1447(c), the Clerk of Court is ordered to mail a certified copy of this Order of remand to the clerk of the originating state court.  The state court may thereupon proceed with this case.  The Clerk of Court shall thereafter close the case in this Court.

IT IS SO ORDERED.

Dated:  April 1, 2022

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE